UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                                                      Chapter 7

Terrill Hardaway,                                                                 Case No. 15-40281

      Debtor.                                                                 Hon. Phillip J. Shefferly
_____/

Estate of Tony Leridge Jackson,                                        Adversary Proceeding
Latonya Jackson, Personal Representative,                     No. 15-4360-PJS

      Plaintiff,

v.

Terrill Hardaway,

      Defendant.
_____/

**OPINION (1) GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT; (2) DENYING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT; AND (3) ABSTAINING FROM FURTHER PROCEEDINGS**

**INTRODUCTION**

This matter is before the Court on cross motions for summary judgment with respect to a complaint to determine the nondischargeability of a debt under § 523(a)(6) of the Bankruptcy Code. The plaintiff is the personal representative of an individual who was fatally shot by the defendant, the debtor in this Chapter 7 case. The plaintiff and the defendant have both moved for summary judgment. For the reasons set forth in this opinion, the Court will grant the plaintiff's motion for summary judgment, deny the defendant's motion for summary judgment, and abstain from further proceedings regarding the plaintiff's claim against the defendant.

## JURISDICTION

The District Court for the Eastern District of Michigan has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) and (b). Pursuant to 28 U.S.C. § 157(a) and E.D. Mich. LR 83.50(a), the District Court has referred this adversary proceeding to the Bankruptcy Court. Although the complaint in this adversary proceeding alleges a claim for a personal injury tort and wrongful death, which can only be tried by the District Court pursuant to 28 U.S.C. § 157(b)(5), the determination of whether the claim is nondischargeable is a core proceeding which this Court may hear and determine under 28 U.S.C. § 157(b)(2)(I).

The parties do not request in their cross motions for summary judgment that this Court adjudicate whether the defendant is liable on the plaintiff's claim for personal injury tort and wrongful death, but only whether such claim is nondischargeable under § 523(a)(6) of the Bankruptcy Code. The parties expressly consent to the Court making a final judgment regarding nondischargeability under § 523(a)(6).

The Court finds that it has the statutory and constitutional authority to make such determination in this core proceeding, leaving the adjudication of the defendant's liability on the plaintiff's claim for personal injury tort and wrongful death and the liquidation of the amount of such claim to another court of competent jurisdiction.

## FACTS

Based on its review of the cross motions for summary judgment and the papers filed in support of the cross motions, the Court finds that the following facts are not in dispute.

Early in the morning on December 29, 2012, Tony Leridge Jackson ("Jackson") was fatally shot by Terrill Hardaway ("Hardaway") outside of the Four Winds Lounge in Detroit, Michigan.

Hardaway was charged with second degree murder for the shooting. On November 11, 2014, the criminal trial against Hardaway commenced in the Wayne County Circuit Court, case no. 14-3105 ("Criminal Case"). Following a jury trial, Hardaway was convicted of voluntary manslaughter and sentenced under Michigan Compiled Laws § 750.321. On December 23, 2014, Latonya Jackson, as the personal representative of Jackson's estate ("Personal Representative") filed a civil complaint in the Wayne County Circuit Court, case no. 14-016275-NO ("Civil Case"), against Hardaway and other defendants, alleging multiple counts, including wrongful death and assault and battery.

On January 12, 2015, Hardaway filed this Chapter 7 case. On April 20, 2015, the Personal Representative filed a one count complaint in this adversary proceeding seeking a determination that the Personal Representative's claim in the Civil Case is nondischargeable under § 523(a)(6) of the Bankruptcy Code because it is for a willful and malicious injury by Hardaway. On May 7, 2015, Hardaway filed an answer to the complaint admitting that he was convicted in the Criminal Case of voluntary manslaughter for the shooting of Jackson, but denying that the Personal Representative's claim is nondischargeable under § 523(a)(6).

On July 20, 2015, the Court held an initial scheduling conference. The Court conferred with the Personal Representative and Hardaway about some of the jurisdictional issues implicated in this adversary proceeding. The Court observed that the Personal Representative's claim against Hardaway is a personal injury tort and wrongful death claim, and that 28 U.S.C. § 157(b)(5) states that the District Court, and not the Bankruptcy Court, shall try any personal injury tort and wrongful claim in a bankruptcy case. The Court explained that because of this provision, it cannot adjudicate the issue of whether Hardaway is liable on the Personal Representative's claim, but must either refer the adjudication of that claim to the District Court under 28 U.S.C. § 157(b)(5), or permit the parties

to litigate that claim in the Civil Case. The Court noted, however, that this Court does have the authority under 28 U.S.C. § 157(b)(2)(I) to determine whether that claim is nondischargeable. Therefore, at the initial conference, the Court allowed the parties to conduct discovery and other pretrial proceedings in this adversary proceeding and scheduled another conference at the end of discovery to discuss any further proceedings, whether in this Court, the District Court, or the Civil Case.

On June 6, 2016, following the close of discovery, the Court held the conference. The parties informed the Court that they now agree that the Wayne County Circuit Court should decide in the Civil Case whether there is any liability owing by Hardaway on the Personal Representative's claim and, if so, the amount of such liability. The parties further informed the Court that they agree that this Court should adjudicate only the issue of whether such claim is nondischargeable under § 523(a)(6).

After conferring with the parties, the Court permitted them a period of time to file cross motions for summary judgment. The Court entered an order setting a deadline to file the cross motions by July 21, 2016. The order expressly stated that "any motion for summary judgment should not address the question of whether there is any liability by [Hardaway] to the [Personal Representative], nor the amount of any such debt, but should only address whether, if there is a debt owing by [Hardaway] to the [Personal Representative], such debt is nondischargeable under § 523(a)(6)."

On July 17, 2016, Hardaway filed a motion for summary judgment. On July 21, 2016, the Personal Representative filed a motion for summary judgment. The Court construes both motions, together with the parties' agreement placed on the record at the June 6, 2016 conference, as a

stipulation by the parties, for the sole purpose of binding them in this adversary proceeding, that there is a debt owing by Hardaway to the Personal Representative, but without prejudice to their respective rights to argue otherwise in the Civil Case.

On September 23, 2016, the Court held a hearing on the cross motions for summary judgment. Because Hardaway's motion for summary judgment made reference to portions of the transcripts from the Criminal Case that were not attached to Hardaway's motion for summary judgment, the Court set a further deadline for Hardaway to provide the Court with copies of those excerpts. In addition, at the hearing both parties requested the Court to view, as part of the record for the cross motions for summary judgment, a videotape of the shooting that was received into evidence in the Criminal Case. The Court then took the cross motions for summary judgment under advisement.

Following the hearing, Hardaway provided the Court with the excerpts of the transcripts of the Criminal Case referred to in his motion for summary judgment, as well as a copy of the videotape. The Court has now had an opportunity to review those materials, as well as the materials submitted by the Personal Representative in support of her motion for summary judgment, which consist of extensive portions of the transcripts from the Criminal Case. The cross motions for summary judgment are now ripe for decision.

## STANDARD FOR SUMMARY JUDGMENT

Fed. R. Civ. P. 56 for summary judgment is incorporated into Fed. R. Bankr. P. 7056. Summary judgment is only appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not

15-04360-pjs    Doc 36    Filed 10/05/16    Entered 10/05/16 11:46:01    Page 5 of 17

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48. A "genuine" issue is present "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (quoting Anderson, 477 U.S. at 248).

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell International Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Id. (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d at 566 (citing Anderson, 447 U.S. at 256).

## DISCUSSION

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity . . . ." To prevail under § 523(a)(6), the Personal Representative must prove by a preponderance of the evidence that Hardaway acted both willfully and maliciously to injure Jackson. An act is willful only if the actor intends not only the act itself but also the injury that results from the act, or believes that the injury is substantially certain to occur as a result of the act. Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998); Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 464 (6th Cir. 1999). "'Malicious' means in conscious disregard of one's duties or without just cause or excuse[.]" Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir. 1986) (citing

-6-

in part Tinker v. Colwell, 193 U.S. 473, 485-86 (1904) (same, interpreting analogous § 17(a)(2) of the former Bankruptcy Act)).

Before reviewing the materials assembled by the parties in support of their respective summary judgment motions, the Court must first consider what effect, if any, that Hardaway's conviction in the Criminal Case has in this adversary proceeding. More specifically, does the conviction collaterally estop either the Personal Representative or Hardaway from litigating any of the elements of § 523(a)(6)?

Collateral estoppel principles apply to nondischargeability adversary proceedings in bankruptcy court. Grogan v. Garner, 498 U.S. 279, 285 n.11 (1991). The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires bankruptcy courts to examine the law of the state in which a judgment was rendered to determine its preclusive effect. Bay Area Factors v. Calvert (In re Calvert), 105 F.3d 315, 317 (6th Cir. 1997). If the law of the state in which a judgment was rendered gives preclusive effect to such judgment, then the bankruptcy court must do so as well unless there is an implied or express exception. In Calvert, the Sixth Circuit found that there is no implied or express exception for dischargeability proceedings. In this adversary proceeding, the judgment in question is a conviction in the Criminal Case. Because the conviction was entered in Michigan, Michigan law regarding collateral estoppel applies.

Under Michigan law, "[c]ollateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined." People v. Gates, 452 N.W.2d 627, 630 (Mich. 1990) (footnote and citations omitted).

-7-

15-04360-pjs    Doc 36    Filed 10/05/16    Entered 10/05/16 11:46:01    Page 7 of 17

There is no dispute that the Criminal Case is a prior proceeding that culminated in a valid, final judgment with Hardaway's conviction for voluntary manslaughter. But before considering what issues were actually litigated and necessarily determined by the conviction, there is a threshold question as to whether the parties to this adversary proceeding are the same as the parties to the Criminal Case. That question is important because Michigan courts hold that there must be mutuality of estoppel. "[M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action." Monat v. State Farm Ins. Co., 677 N.W.2d 843, 846 (Mich. 2004) (quotation marks and citations omitted).

The parties to the Criminal Case were the People of the State of Michigan and Hardaway. The parties to this adversary proceeding are the Personal Representative and Hardaway. These are not the same parties. In similar circumstances, bankruptcy courts that have examined Michigan case law have held that mutuality is lacking where the first proceeding is a criminal proceeding brought by the State and the second proceeding is brought by a person who was not a party to the criminal proceeding. See Citizens Ins. Co. of Am. v. King (In re King), 500 B.R. 511, 515-16 (Bankr. E.D. Mich. 2013) (finding collateral estoppel did not apply in a § 523 dischargeability action to a criminal conviction because the plaintiff was not a party in the criminal case) (relying on Michigan v. Trakhtenberg, 826 N.W.2d 136, 141 (Mich. 2012)); Shaw v. Shaw (In re Shaw), 210 B.R. 992, 1000-02 (Bankr. W.D. Mich. 1997) (addressing the mutuality of estoppel requirement with respect to a criminal judgment (no collateral estoppel effect), a civil judgment as to liability (has collateral estoppel effect), and a consent judgment as to the amount of the debt (no collateral estoppel effect)) (relying on Nummer v. Treasury Dept., 533 N.W.2d 250 (Mich. 1995) and

-8-

Lichon v. Am. Universal Ins. Co., 459 N.W.2d 288 (Mich. 1990)).[1]  The Court agrees with these cases and concludes that mutuality of estoppel is absent in this case.

The lack of mutuality of estoppel affects both parties in the adversary proceeding. Hardaway argues that he was only convicted of manslaughter, not second degree murder. To Hardaway, this is an important distinction because second degree murder requires malice, but manslaughter does not. According to Hardaway, this precludes the Personal Representative from now trying to prove malice for purposes of § 523(a)(6). Similarly, the Personal Representative argues that the jury in the Criminal Case necessarily rejected Hardaway's claim of self-defense when it convicted him of manslaughter. According to the Personal Representative, this precludes Hardaway from now trying to prove self-defense for purposes of § 523(a)(6). They are both wrong. As explained, mutuality of estoppel, as required under Michigan law, is lacking. As a result, the Personal Representative is not precluded by Hardaway's conviction from now trying to prove for purposes of § 523(a)(6) that Hardaway acted with malice, and Hardaway is not precluded by his conviction from now trying to prove for purposes of § 523(a)(6) that he acted in self-defense.

Although the conviction in the Criminal Case does not collaterally estop either the Personal Representative or Hardaway with respect to the elements of § 523(a)(6), that does not mean that the testimony and other evidence adduced in the Criminal Case cannot be considered by this Court. To the contrary, both the Personal Representative and Hardaway support their respective motions for summary judgment entirely with evidence from the Criminal Case. In support of her motion for

---

[1] Compare Smith v. Pitner (In re Pitner), 696 F.2d 447 (6th Cir. 1982) (applying Tennessee law, which has relaxed the mutuality of estoppel element, and concluding that the bankruptcy court should have applied collateral estoppel to a conviction for voluntary manslaughter in a subsequent § 523(a)(6) proceeding).

-9-

summary judgment, the Personal Representative attaches hundreds of pages of the trial transcripts from the Criminal Case. In support of his motion for summary judgment, Hardaway too relies on excerpts of the trial transcripts from the Criminal Case. Both parties also point to the videotape to support their motions.

A review of the transcripts of the Criminal Case and the videotape leaves no doubt that Hardaway's fatal shooting of Jackson was an intentional act. Hardaway pointed a gun known to be loaded at Jackson and repeatedly pulled the trigger. Neither the portions of the transcripts that Hardaway points to nor the videotape create any genuine issue of material fact on this element of § 523(a)(6).

Hardaway argues that even if his fatal shooting of Jackson was a willful act, it was not one that was taken with malice because it was done in self-defense. In other words, according to Hardaway, he had just cause or excuse for the shooting.

"[T]he cardinal rule, applicable to *all* claims of self-defense, is that the killing of another person is justifiable homicide if, under all the circumstances, the defendant honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force." Michigan v. Riddle, 649 N.W.2d 30, 46 (Mich. 2002).

> A claim of self-defense first requires proof that the defendant has acted in response to an assault. "[W]here a defendant charged with murder asserts that he killed in self-defense, his state of mind at the time of the act is material because it is an important element in determining his justification for his belief in an impending attack by the deceased."

Michigan v. Elkhoja, 651 N.W.2d 408, 423 (Mich. Ct. App. 2002) (quoting Michigan v. Harris, 583 N.W.2d 680 (Mich. 1998)) (other citation omitted), vacated in part on other grounds, 658 N.W.2d 153 (Mich. 2003). However, "[i]t has long been clear in Michigan that the right of

-10-

self defense commences and ceases when real or apparent necessity begins and ends." Michigan v. Townes, 218 N.W.2d 136, 143 (Mich. 1974) (Williams, J., concurring) (citing in part People v. Giacalone, 217 N.W. 758 (Mich. 1928); People v. Walters, 194 N.W. 538 (Mich. 1923)).

The Personal Representative supplied the Court with extensive transcripts of testimony from multiple witnesses in the Criminal Case. LaTina Bronson testified that Jackson was her fiancée. Jackson worked nights as a DJ at the Four Winds Lounge. Bronson described an altercation at the bar about a week before the fatal shooting. She believed that Hardaway had inappropriately touched her and Hardaway was belligerent and aggressive when she confronted him. Hardaway then confronted Jackson, a fight ensued, and Hardaway drew a gun which Bronson knocked out of his hand. Hardaway left the bar, threatening to come back and kill Jackson and Bronson. Bronson was not present at the bar a week later on December 28, 2012, when the shooting took place. Bronson's testimony was corroborated by the testimony of Jackson's friend Timothy Brown.

Marcus Jones testified in the Criminal Case that he was Jackson's best friend. Jones was at the DJ booth talking to Jackson on the night of December 28, 2012. His back was to the door. At some point he turned and Hardaway was next to him approaching Jackson. After a face-to-face exchange, which he could not hear, Jones saw Hardaway pull a gun and put it to Jackson's face. Jones hit Hardaway with a bottle and the gun flew in the air. Two security guards broke up the fight. Jones then left the bar.

Earnest Yarbrough, Sr., a security guard at the bar, testified in the Criminal Case that he was working the night of December 28, 2012. He observed Hardaway entering the bar and walking straight to where Jackson was at the DJ booth and the two talking. He saw the fight begin and helped to break it up. Hardaway exited from the back door. Yarbrough testified that he heard the

-11-

first shot and ran to the back door, which was glass. He saw a struggle between Hardaway and two other individuals, like they were trying to reach for something. Then he saw Hardaway raise his hand up and shoot Jackson four times.

Shantell Njiwaji, an assistant medical examiner at the Wayne County Medical Examiner's office, testified in the Criminal Case that she performed the autopsy on Jackson. The manner of death was homicide and the cause was multiple gunshot wounds. Jackson suffered from five gunshot wounds, two to the back, one of which was fatal. Jackson also had abrasions to his face, elbow and knee. Njiwaji concluded that the abrasions were from a terminal fall. In other words, Jackson hit the ground without bracing himself, and died instantly.

Hardaway directed the Court to several additional pages of the transcripts from the Criminal Case. In most instances, the highlighted testimony on those pages is consistent with the testimony described above, except that the testimony Hardaway pointed to in these pages focuses more on showing that Jackson, not Hardaway, chose to prolong the altercation after the initial fight in the bar had ended. For example, Sergeant Gibson, supervisor of the video forensic team of the Detroit Police Department, provided extensive testimony about the videotape. He testified that the videotape shows that Jackson was the initial aggressor in the parking lot, and shot Hardaway. Also, Yarbrough's testimony shows that Jackson managed to talk Yarbrough into giving him his gun back after Hardaway attacked him inside the bar. Another transcript excerpt that Hardaway highlights from the Criminal Case is from November 18, 2014. The entire transcript for that day is not part of the record, so the Court has only the few pages provided by Hardaway. In this excerpt, an unidentified witness testifies that the videotape shows that, even as he is running in retreat, Jackson continues to shoot at Hardaway.

In addition to the portions of the transcripts of testimony in the Criminal Case, both the Personal Representative and Hardaway rely on the videotape to support their respective positions on the self-defense issue. The videotape shows three side-by-side, synchronized exterior views of the Four Winds Lounge. The first view is of the street in front of the building. The other two are of the back entrance and adjoining parking lot. The first view shows Jackson pacing in front of the building, moving away from the camera to the corner of the building and looking around the corner toward the back entrance and parking lot, and then back toward the camera, with what appears to be a gun in his hand. Shortly after that, Hardaway is pushed out of the back door into the parking lot, and is actively resisting. A third person comes out the back door. While this is going on, the first view shows Jackson pausing at the corner of the building, then turning the corner and proceeding into the parking lot, quickly confronting Hardaway with his gun drawn. The confrontation lasts a few seconds. Then Jackson shoots Hardaway and, in a split second, Hardaway somehow gets his gun back. After shooting Hardaway, Jackson immediately turns and starts running away from Hardaway and the other people. Hardaway shoots him in the back. Jackson falls to the ground, gets up and stumbles around toward the front of a vehicle. Hardaway follows Jackson, shooting him in the back again. Jackson falls out of sight on the far side of the vehicle. Hardaway still follows Jackson, stands where Jackson fell, and bends down out of the camera's line of vision. Then Hardaway stands up and walks back around the vehicle to join the other people by the back door.

The evidence in the Criminal Case makes it clear that the altercation in the bar ended and Jackson could have left well enough alone. But he didn't. Hardaway is correct that Jackson became the aggressor when he came out to the parking lot. However, despite that fact, both the testimony

-13-

in the Criminal Case and the videotape demonstrate that in an instant, Hardaway turned from a victim into an aggressor, chasing Jackson while Jackson was fleeing. Although one unidentified witness testified that Jackson continued to shoot at Hardaway while Jackson was fleeing, the Court disregards that testimony because the videotape directly controverts it. The Court has viewed the videotape multiple times. It does not show Jackson continuing to shoot at Hardaway. To the contrary, it unequivocally shows that any imminent danger had passed, and Jackson was now just running from Hardaway, with his back turned to Hardaway. Yet Hardaway, now clearly the aggressor, kept chasing Jackson, and then shot Jackson twice in the back, once fatally.

The testimony and videotape prove that Hardaway did not act in self-defense, and Hardaway has not come forward with any contrary evidence. The evidence in the Criminal Case proves that Hardaway did not have just cause or excuse for fatally shooting Jackson.[2] Hardaway acted with malice. Even construing all of the evidence before the Court in a light most favorable to Hardaway does not persuade the Court that there is a genuine issue of material fact on this element of § 523(a)(6).

---

[2] Even though Hardaway's conviction for voluntary manslaughter does not have collateral estoppel preclusive effect for the reasons earlier explained, the jury's decision to convict Hardaway of voluntary manslaughter necessarily means that the jury too rejected Hardaway's contention of self-defense. "Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." Michigan v. Bailey, 777 N.W.2d 424, 425 (Mich. 2010) (quotation marks and citation omitted) (Kelly, C.J., concurring); Michigan v. Elkhoja, 651 N.W.2d 408, 423 (Mich. Ct. App. 2002) (citing Michigan v. Sullivan, 586 N.W.2d 578 (Mich. Ct. App. 1998)), vacated in part on other grounds, 658 N.W.2d 153 (Mich. 2003). The jury could not have convicted Hardaway had they found him to have acted in self-defense. While the jury's finding is not binding on this Court, it is consistent with the Court's own review of the evidence at the Criminal Case, and is consistent with a finding that Hardaway was not acting with just cause or excuse.

As noted at the outset of this opinion, the only issue that the Court is adjudicating is whether the Personal Representative's claim is nondischargeable under § 523(a)(6) of the Bankruptcy Code. For the reasons explained, the Court holds that the Personal Representative's claim is nondischargeable. The Court agrees with the parties that the Wayne County Circuit Court, rather than the District Court, is the best forum to now determine whether Hardaway is liable on this claim and, if so, the amount of that liability. Therefore, rather than refer any further proceedings to the District Court pursuant to 28 U.S.C. § 157(b)(5), the Court will abstain from further proceedings and permit the Civil Case to go forward.

Title 28 U.S.C. § 1334(c)(1) provides as follows:

Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Because "the interest of justice" and "the interest in comity" are fluid concepts, courts look at many factors in determining whether to apply permissive abstention, including

(1) the effect or lack of effect on the efficient administration of the estate if a court abstains;

(2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable state law;

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden of this court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties; and

(13) any unusual or other significant factors.

Kmart Creditor Trust v. Conway (In re Kmart Corp.), 307 B.R. 586, 596-97 (Bankr. E.D. Mich. 2004) (citations omitted). See also Cordes v. Continental Holdings, Inc. (In re Continental Holdings), 158 B.R. 442, 446 (Bankr. Ohio 1993) (same).

Several of the identified factors are applicable here. First, the question of whether Hardaway is liable on the Personal Representative's claim for personal injury tort or wrongful death is purely a matter of state law, not bankruptcy law, and not federal law. Second, Hardaway is the only defendant in this adversary proceeding. In contrast, there are other non-debtor parties named as defendants, along with Hardaway, in the Civil Case. Allowing the Civil Case to go forward with all of the named defendants will result in only one judicial proceeding, rather than two judicial proceedings if the District Court were to conduct a separate trial with only Hardaway as a defendant. Third, Hardaway's bankruptcy case is a no-asset Chapter 7 case, so the administration of this estate will not be affected at all by allowing the Civil Case to go forward. Fourth, there is no jurisdictional basis for this adversary proceeding in the federal courts other than 28 U.S.C. § 1334. Fifth, allowing the Civil Case to go forward rather than having the District Court hear the remaining issues in this adversary proceeding will not encourage forum shopping. Quite the opposite. The Personal

Representative filed the Civil Case in Wayne County Circuit Court on December 23, 2014 before this bankruptcy case was even filed. It was Hardaway who then filed the bankruptcy case which led to the Personal Representative filing the nondischargeability adversary complaint in this Court.

In sum, to the extent that they are present at all in this adversary proceeding, the factors that courts traditionally look at when considering permissive abstention under § 1334(c)(1) weigh heavily in favor of this Court abstaining from hearing the remaining issues in this adversary proceeding. Abstaining from hearing the remaining issues in this adversary proceeding, and thereby obviating the need to refer further proceedings to the District Court, will promote judicial economy and will promote the policies embodied in § 1334(c)(1).

## CONCLUSION

There are no genuine issues of material fact regarding § 523(a)(6) of the Bankruptcy Code. The Personal Representative's claim against Hardaway is nondischargeable in Hardaway's Chapter 7 case. In the exercise of its discretion under 28 U.S.C. § 1334(c)(1), the Court abstains from the remaining issues in this adversary proceeding. Therefore, the determination of liability on this claim and the amount of that liability, will be decided by the Wayne County Circuit Court in the Civil Case. In addition to abstaining from further proceedings, the Court will lift the automatic stay of § 362 of the Bankruptcy Code to permit the Personal Representative to proceed against Hardaway in the Civil Case. The Court will enter a separate order consistent with this opinion.

Signed on October 05, 2016

                                                          /s/ Phillip J. Shefferly
                                                          Phillip J. Shefferly
                                                          United States Bankruptcy Judge